No. 23-40336

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JOSE PAZ MEDINA-CANTU,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

_____

REPLY BRIEF FOR APPELLANT
_____

MARJORIE A. MEYERS
Federal Public Defender
Southern District of Texas

KATHRYN SHEPHARD
Assistant Federal Public Defender
Attorneys for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002-1056
Telephone: (713) 718-4600

## TABLE OF CONTENTS

                                                                                                    **Page**

TABLE OF CONTENTS ................................................................................. i

TABLE OF CITATIONS .............................................................................. ii

STATEMENT OF THE REPLY ISSUES .................................................... 1

ARGUMENT .................................................................................................. 2

    **REPLY ISSUE ONE RESTATED**: 18 U.S.C. § 922(g)(5)(A) violates the Second Amendment. ................................................................................ 2

    **REPLY ISSUE TWO RESTATED**: 18 U.S.C. § 922(g)(5)(A) is unconstitutional as applied to Mr. Medina-Cantu because it allowed a conviction based only on the firearm and ammunition's manufacture outside of, and subsequent importation to, the state in which they were possessed, without regard to any involvement by Mr. Medina-Cantu in such transportation or in the economic activity associated with the purchase or sale of the firearm and ammunition. (Foreclosed issue.). ............ 7

CONCLUSION .............................................................................................. 8

CERTIFICATE OF SERVICE .................................................................... 9

CERTIFICATE OF COMPLIANCE ........................................................ 10

# TABLE OF CITATIONS

Page

## CASES

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ............................................... 5

*In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787
  (5th Cir. 2021) ........................................................................................................ 2

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022) ..................................................................................... 2-4, 6

*United States v. Daniels*, 77 F.4th 337
  (5th Cir. 2023) ..................................................................................................... 4-5

*United States v. Portillo-Munoz*, 643 F.3d 437
  (5th Cir. 2011) ..................................................................................................... 2-3

*United States v. Rahimi*, 61 F.4th 443
  (5th Cir. 2023), *cert. granted*,
  (U.S. June 30, 2023) (No. 22-915) ...................................................................... 2-5

*United States v. Sing-Ledezma*, __ F. Supp. 3d __,
  No. EP-23-CR-823(1)-KC, 2023 WL 8587869
  (W.D. Tex. Dec. 11, 2023) ................................................................................... 3-6

*United States v. Sitladeen*, 64 F.4th 978
  (8th Cir. 2023) ........................................................................................................ 3

## CONSTITUTIONAL PROVISION

U.S. Const. amend. II ................................................................................. i, 1-2, 4-6

## STATUTE

18 U.S.C. § 922(g)(5)(A) ..................................................................................*passim*

## STATEMENT OF THE REPLY ISSUES

**REPLY ISSUE ONE**: Whether 18 U.S.C. § 922(g)(5)(A) violates the Second Amendment.

**REPLY ISSUE TWO**: Whether 18 U.S.C. § 922(g)(5)(A) is unconstitutional as applied to Mr. Medina-Cantu because it allowed a conviction based only on the firearm and ammunition's manufacture outside of, and subsequent importation to, the state in which they were possessed, without regard to any involvement by Mr. Medina-Cantu in such transportation or in the economic activity associated with the purchase or sale of the firearm and ammunition. (Foreclosed issue.)

# ARGUMENT

**REPLY ISSUE ONE RESTATED**: 18 U.S.C. § 922(g)(5)(A) violates the Second Amendment.

Mr. Medina-Cantu first argued in his opening brief that *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), abrogated this Court's Second Amendment precedent, as this Court itself already held in *United States v. Rahimi*, 61 F.4th 443, 450 (5th Cir. 2023), *cert. granted* (U.S. June 30, 2023) (No. 22-915), and that the abrogation of pre-*Bruen* precedent included *United States v. Portillo-Munoz*, 643 F.3d 437, 442 (5th Cir. 2011), *as revised* (June 29, 2011), in which this Court had upheld 18 U.S.C. § 922(g)(5)(A)'s constitutionality. Br. for Appellant ("Def. Br.") 7-12. He then explained how the government could not meet its burden under *Bruen* to show either "distinctly similar" or "relevantly similar" historical precursors analogous to § 922(g)(5)(A). Def. Br. 11-19.

In its response brief, the government continues to cling to *Portillo-Munoz*, despite what this Court held in *Rahimi*, and fails to meet its burden under *Bruen*. The government's argument that *Portillo-Munoz* remains good law after *Bruen*, Br. of Plaintiff-Appellee ("Gov't Br.") 10-22, is unpersuasive. In a footnote, the government cites *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021), and acknowledges that a Supreme Court case may constitute an intervening change in the law when it "unequivocally overrule[s] prior precedent." Gov't Br. 21 n.8. But the government never mentions that *Rahimi* itself cited that exact same case

and held that *Bruen* qualified as one such intervening change in the law, "rendering [the Court's] prior precedent obsolete." *Rahimi*, 61 F.4th at 450-51; *see also* Def. Br. 9-10 (making this point).

Essential to the government's *Portillo-Munoz* argument is the Eighth Circuit's decision in *United States v. Sitladeen*, 64 F.4th 978 (8th Cir. 2023), where that circuit reaffirmed its own pre-*Bruen* precedent on § 922(g)(5)(A). *See* Gov't Br. 13-17, 19, 21-22 (citing *Sitladeen passim*). But the Eighth Circuit is not bound by *Rahimi* and, in fact, the Eighth Circuit in *Sitladeen* **expressly disagreed with** this Court's analysis in *Rahimi*. *See Sitladeen*, 64 F.4th at 986-87. Had the Eighth Circuit been required to follow *Rahimi* as precedent, it would have had to reach the opposite conclusion. *Sitladeen* thus supports Mr. Medina-Cantu's position, not the government's. And a district court in this Circuit has recently issued a decision rejecting the government's continued reliance on *Portillo-Munoz* after *Bruen*, in light of this Court's binding precedent in *Rahimi*. *See United States v. Sing-Ledezma*, \_\_ F. Supp. 3d \_\_, No. EP-23-CR-823(1)-KC, 2023 WL 8587869, at *6 (W.D. Tex. Dec. 11, 2023).

That district court further held that the government did not meet its *Bruen* burden to show that § 922(g)(5)(A) is consistent with the Nation's historical tradition of firearm regulation. After examining the history of § 922(g)(5)(A), the court considered the same historical evidence that the government has put forth in its appellate brief in this case, *see* Gov't Br. 22-32, and explained in detail why that

3

evidence fell short under *Bruen* and this Court's post-*Bruen* decisions in *Rahimi* and *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023). *Sing-Ledezma*, 2023 WL 8587869, at *8-*18. Beginning with the English Bill of Rights, the court found that "the English Bill of Rights' limitation of the right to bear arms to 'Subjects' does not share a common method and purpose with § 922(g)(5)(A) and is thus not a relevantly similar historical analogue." *Id.* at *8-*9. Particularly, the Framers did not adopt concrete language limiting the Second Amendment and instead, "the People ratified the unqualified directive: 'shall not be infringed.'" *Id.* at *9 (quoting *Daniels*, 77 F.4th at 352). Moreover, the Second Amendment uses the phrase "the people" rather than the term "subjects," and that use of "meaningfully different language" makes the English Bill of Rights a "poor basis to determine whether § 922(g)(5)(A) comports" with the Second Amendment. *Id.* at *9.

The court next considered the government's proffered "laws from the American Colonies and early Republic." *Id.* at *10. After briefly surveying the history of immigration in the United States, the court determined that the state ratification convention proposals, state constitutional provisions, danger-based disarmament laws, and restrictions on militia membership cited by the government all failed to satisfy the government's *Bruen* burden. *Id.* at *10-*17. For the state ratification convention proposals, the court emphasized that the government had pointed to those same sources in *Rahimi* to no avail. *Id.* at *12. Furthermore, the

Supreme Court was "[c]onfronted with similar evidence in [*District of Columbia v. Heller*, 554 U.S. 570 (2008)]," and found reliance on such sources to be "dubious." *Sing-Ledezma*, 2023 WL 8587869, at *12 (quoting *Heller*, 554 U.S. at 603). The court reasoned that, "[i]f anything, the fact that these proposals were rejected cuts against the Government's contention." *Id.* at *12. That same reasoning applied to the state constitutional provisions restricting the right to bear arms to "citizens": Amendments to include a similar restriction in the Second Amendment to the United States Constitution "were proposed by at least two states' delegates and rejected." *Id.* at *13.

As for danger-based disarmament laws, the court determined that laws "prohibiting Native Americans, Catholics, and British Loyalists from possessing guns" were insufficient for the government to meet its burden because § 922(g)(5)(A) "sweeps much more broadly than the proffered historical laws, each of which is narrowly tailored towards a particular group with which the United States was in active conflict." *Id.* at *14. The court undertook the analysis required by this Court in *Rahimi* and *Daniels*, compared both the "why" and the "how" for § 922(g)(5)(A) and each type of danger-based disarmament law, and concluded that they were much too different for the latter to serve as appropriate historical analogues for the former. *Id.* at *14-*17. For example, laws requiring loyalty oaths were "enacted in the context of the Revolutionary War to prevent those loyal to Great

5

Britain from supporting the British war efforts. No state enacted a blanket ban on aliens owning guns." *Id.* at *16. In its brief in Mr. Medina-Cantu's case, the government likewise pointed to the Revolutionary Era loyalty oath laws and remarked that "[t]here is no question that illegal immigrants have not taken any oath of allegiance." Gov't Br. 27-28. The government has overlooked that most natural-born citizens also have not taken any oath of allegiance.

Finally, the court found that the historical record on whether unlawfully present aliens would be eligible for militia membership to be "unclear." *Sing-Ledezma*, 2023 WL 8587869, at *17. But the court went on to reason that, regardless, the Supreme Court in *Bruen* had "squarely rejected the notion that one's right to bear arms depends on whether they would be required to serve in the militia, notwithstanding the first clause of the Second Amendment." *Id.* at *17 (citing *Bruen*, 142 S. Ct. at 2127).

Because none of the government's cited historical sources meet its *Bruen* burden, § 922(g)(5)(A) is unconstitutional, and this Court should vacate Mr. Medina-Cantu's conviction for violating that statute.

**REPLY ISSUE TWO RESTATED**: 18 U.S.C. § 922(g)(5)(A) is unconstitutional as applied to Mr. Medina-Cantu because it allowed a conviction based only on the firearm and ammunition's manufacture outside of, and subsequent importation to, the state in which they were possessed, without regard to any involvement by Mr. Medina-Cantu in such transportation or in the economic activity associated with the purchase or sale of the firearm and ammunition. (Foreclosed issue.)

The parties agree that this issue is preserved but foreclosed. *See* Gov't Br. 33-34; Def. Br. 20-25.

## CONCLUSION

For the reasons stated in Mr. Medina-Cantu's briefs, this Court should vacate his § 922(g)(5)(A) conviction.

Respectfully submitted,

MARJORIE A. MEYERS
Federal Public Defender
Southern District of Texas

s/ Kathryn Shephard
KATHRYN SHEPHARD
Assistant Federal Public Defender
Attorneys for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002-1056
Telephone: (713) 718-4600

## CERTIFICATE OF SERVICE

All parties required to be served with copies of this document have been so served by filing via the Fifth Circuit ECF filing system.

                                              s/ Kathryn Shephard  
                                              KATHRYN SHEPHARD

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 1,355 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 (current version) software in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

3. This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because the brief has been redacted of any personal data identifiers.

4. This brief complies with the electronic submission of 5th Cir. R. 25.2.1 because this brief is an exact copy of the paper document.

5. This brief is free of viruses because the brief has been scanned for viruses with the most recent version of a commercial virus scanning program.

s/ Kathryn Shephard  
KATHRYN SHEPHARD
